First of all, I want to apologize for starting late, 32 or so, but we are ready to begin now. As far as the first case, I would ask that the attorneys who are going to be arguing for each side, please, both of you, if there's two, step up to the podium and kindly identify yourselves for the record. Nicholas P. Haft, H-O-E-F-T, on behalf of Appellant Clingman Lisa Dudley. Your last name again? H-O-E-F-T, Haft. Haft. And Eric E-R-I-C Dorkin, D-O-R-K-I-N, for the FLE, FNBC Bank and Trust. All right, Mr. Dorkin. All right, each of you will have approximately 20 minutes to present oral argument and from that start. Haft. Haft. You will save some time for rebuttal. What would you like to do? I would like to present oral argument. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft. Haft Would you like to save a certain amount or just want to play it by ear? I would like to play it by ear, Your Honor. All right. I would like to save some time for rebuttal. Certainly, and we will give you that. All right. You may sit down and then proceed. And again, both of you I should remind you, didn't you receive a notice to be prepared to argue a particular issue in this oral argument? Yes, Your Honor. All right, good, and we can start. Good morning, Your Honors and Counsel for Appellees. May it please the Court, my name is Nicholas P. Haft, and I am one of the attorneys representing the claimant appellant, Lisa Dudley. We are here today asking that this Court reverse the trial court's dismissal of appellant's claim for compensation owed for carryover services rendered to the decedent, Alice Louie, and remand the case back to the trial court for further proceedings on appellant's claim, which was timely filed. Standard review today is de novo, and what we are asking the Court to do is find that the trial court misapplied 755-ILCS5-2-6.2, which is also known as the Elder Abuse Statute of the Appropriate Act, or I would also refer to it as the EAS for short. We believe that the Court misapplied the EAS in its dismissal of appellant's claim and is being barred under the same. Mr. Haft, you're not contesting that your client, Ms. Dudley, actually did plead guilty to the misdemeanor, which was an abuse of Ms. Louie, right? We, well, she did plead guilty to misdemeanor battery. However, we don't believe that misdemeanor battery. I got that. You're saying that the statute specifically delineates what offenses preclude her from recovery under the Appropriate Act, right? Correct. That's one of the two. But you're not contesting that the misdemeanor conviction was actually the abuse of Ms. Louie, right? It's just that conviction isn't enumerated in the statute. Correct. That conviction is not an enumerated offense. Well, that's not what your position was actually. Well, you're right. You're correct. That was something that neither party has ever even addressed as far as I recall. There's nothing in the briefs that suggested in any way, shape, or form that any of you ever suggested to the trial judge that misdemeanor battery isn't one of the enumerated offenses. I believe that was our question presented for review, but the meat of our appellant's brief was subject on the second issue, which is what was triggered by it. So I believe the question presented for review was whether a conviction for misdemeanor battery was an offense included under Section 12.44A, Subsection B of the Criminal Code. Why don't we talk about that? Because that's actually a critical issue, isn't it? You're correct. Whether you could meet the standard on the other provision isn't really the first issue. Correct. I believe that we don't have to get to the issue necessarily of whether her claim would be barred by the language of the barring, but rather whether it applies in the first place. And I think the simplest way to get to that question is to look at the plain language of the statute itself. And what I mean by the statute is the E.S. Subsection B, which says person's convicted of abuse. And then you turn to Subsection A of 5-2-6.2, and it says abuse means any offense. And I don't think we could ignore offense and take it generally because the Criminal Code itself in Section 720-IL-5-2-12 actually defines offense. So offense isn't a term of art. It's actually a defined term in the Criminal Code, meaning a violation of a penal statute. So if we combine and put the sections of the statute together, it says person's convicted of abuse means any violation described in Subsection B of Section 12.44A. And if you have to be convicted of a violation of that specific criminal section, 12.44A, which is felony criminal assault of an elderly person, that, to our reading, is the only thing that can be considered because the offense definition says a violation of that law, which is a very important distinction because criminal felony assault is, in fact, a felony. And felonies have much more severe consequences. But don't felonies have lesser-included offenses? And wouldn't misdemeanor battery be one of those lesser-included offenses? I would agree that it is a lesser-included offense. However, she wasn't found guilty of the more severe crime, so the lesser-included offense is not implied in the conviction. She was pled guilty to the lesser-included offense, which she was also charged with battery. She was charged with felony criminal neglect of an elderly person, felony aggravated domestic battery, felony assault with battery of a senior citizen, and misdemeanor battery. Are you sure you want to concede that oral argument today that misdemeanor battery is a lesser-included offense of abuse of an elderly person under the statute? Well, as being charged, however, a conviction of the lesser offense would not mean a conviction of the greater offense. So one of the hallmarks of the Illinois criminal system is that defendants, in order to solidify or make sure that they know what they will be found guilty of, will plead down to lesser offenses that do not carry the severity or the weight of the greater crime. So in this instance, the claimant pled down to a lesser offense, which is not included because she was not convicted of the greater offense. So she pled down to what would be a misdemeanor charge. And a misdemeanor charge versus a felony charge have very different consequences in a lot of areas. And specifically, if you look at the Probate Act, which is where the LOB statute arises, when someone is convicted of a felony, they can't act in a certain capacity, such as a guardian or an administrator or an executive at a state. However, if they were convicted of a misdemeanor, they would not be barred to act. So I think the distinction between... What about the legislative intent? You think the legislative intent in this Probate Act is to preclude claims such as the one Ms. Louie made in light of the fact that she was convicted of battering a person that was actually in her care? Well, I believe that the legislative intended for it to include the battering, and it would have said so. It would have said different sections, or it wouldn't have listed specifically 12-4.4a by reference. And again, the idea of the definition of offense in the criminal code means a violation of that act. And the only way you can be in violation of that act is to be considered guilty of it. And she was never found guilty of a violation of Section 12.44a. She was found guilty of a lesser... She wasn't convicted. She was not convicted. The language of the statute is it has to be a conviction. It has to be a conviction, and it also has to be a violation of that specific penal code section. So when you take the statute as a whole, she wasn't convicted of the greater crime, which is felony abuse of an elderly person. She was convicted of a lesser crime that does not carry the consequences of elderly abuse. Well, let's get on to the other merits. The court in this case, she found that the defendant here was actually guilty of abuse under the statute, and she also then concluded that she could not have a claim under the language. There was a motion to dismiss all of her counts. You're only challenging the quantum merit. Correct. And the reason why that is is because we believe that is the second problem. So even if the court, this court, agrees with the trial court that the misdemeanor battery is an offense that should be construed the same as the felony assault of an elderly person, the second problem is the test still has to be passed, and we don't believe that it does in the sense of the EAS only bars claims that arise by the reason of the death and which pass pursuant to an instrument. So the distinction here is that claimant's claim does not arise by the reason of the death of the decedent. Claimant's claim existed prior to it and would survive it. It's not a windfall, which are the type of property passages that the statute on its face appears to be attempting to bar. This would be a quasi-contractual claim that could have been brought before the passing. Moreover, this type of claim, let's say that an appellant had passed away. Appellant's claim, let's say that the consequences of the statute were such that are in the EAS where the abuser is deemed to have pre-deceased a decedent. But under your interpretation of the statute, don't you suggest in your brief that relatives of a caregiver are excluded, but then people like Ms. Louie who aren't related can benefit from the statute? Well, that's because relatives seem to have done things because you're family. So the reason why that's an exclusion is they... Why is the vast majority of caregivers who are found to have been abused actually usually related? I don't have any statistics to know that one way or the other, Your Honor. But the way that we look at it is the claim for caregiver service, even if the claimant is deemed to have pre-deceased by consequences of the act, the claimant's estate still has a claim that they can maintain. In Braun, the case cited by Appellese to support the position that all contract claims should be negated and barred by the act, it doesn't follow. And the reason why is in that case, the mother was making claims against the deceased husband's estate for contributions to college funding for the son who was the slayer. So under the slayer statute, the son was deemed to have pre-deceased his father. The reason why that claim failed was because how could mom make a claim for contributions to a son's college education when the son himself was deemed pre-deceased? So because of the pre-deceasing of son in Braun, there could be no claim by mother for college contributions to pay for his thing. So the marital settlement agreement itself wasn't knocked out by virtue of the act. It was knocked out by virtue of the fact that the son was deemed to have pre-deceased. In this case, if Appellant is deemed to have pre-deceased the claimant or the decedent, the claimant's estate could bring a claim against the decedent's estate. You filed claims against the brother as well, didn't you? We, I don't recall if the claims were against the brother. I'm sorry, the estate of the brother? And those were dismissed? That's a separate action. I believe there's an estate of the brother that's a guardianship estate. Yeah. And that is a separate estate and not tied to this one, but yes, I believe that's the case. Didn't she, didn't everything pass to him, his estate? No, the estate of the decedent does not pass to the brother's estate. I thought that Miss Louie had known. I thought he was her sole heir, the brother. And didn't Miss Dudley also make a claim that she was a caregiver to him as well? Yes, and she was a caregiver to him. Okay. And those were already dismissed, weren't they? Those were, yes. And so if her estate, I thought she had no will. She. So it all passed to the brother in custody. But again, the claim, the claim of the claimant is independent of all this. So the type of passage that you're referring to are the exact type of transactions that are barred by the Act. Those are testamentary gifts. Those are trains for undead instruments. Those are things passing by in custody. But before any of that would happen to go to brother, claims against the estate would still be valid for creditors. And that's what claimant would amount to here. She is a creditor. She provided services, and those services were accepted with the idea of being paid for. And so even if she's predetermined a pre-deceased, her estate can say, look, like any other compensation earned, we can still go after those even though she's dead. We still have that. This isn't an order to take the passage of the property. You need to survive the decedent. So to take under a will, you need to survive the person that is passing the property. The claim for caregiver services rendered for compensation owned is in no way tied to the death of the decedent or the death of the claimant themselves. Well, that's – but also it – we would have to interpret by reason of depth the way you're suggesting it be interpreted contrarily to what the estate is claiming. Well, I think our interpretation flows with the – Did the trial court find essentially – or they agreed with the – They did agree. They said that it's not by passage that the trial court said by any means. But again, in order for the trial court to have reached that decision, they have to completely ignore the triggering language of by reason of depth. Well, how do you respond, though, to your position, which essentially means that family caregivers are barred but nonrelative caregivers are not? That turns on, again, this idea that family caregivers are deemed by the legislature to do things out of the kindness of their heart because they're family. So what they don't want them doing is providing care to this person because they're a family member and you're taking care of them then after they die, asserting a claim for services rendered. Well, let's just – we leave the intent completely different than what you're saying. Again, the intent of the statute is to prevent any caregivers, whether they be family, non-family, or not, to prevent them from taking from the estate once they've been convicted of abusing an elderly person in their care. Only the windfall. Again, you're saying that we should strip a person of rightfully earned windfall. No, I'm not saying that. I'm just saying that this – one of the things that we can't do is to have an absurd result. If we interpret a statute that would suggest that as long as you're not a family member, by reason of death means this, but if you're a family member, it doesn't mean this. And that is what normally might be considered an absurd result that family caregivers can't take. But as long as you're not a family member and you're abusing someone, you can't. Well, again, it turns on this idea of the by reason of death. And the other important word in the statute is the passes. So, again, that's an automatic event. That's something that's passing by reason of the death. Here, again, the caregiver has earned this compensation through hard work. Now you're saying that if this is interpreted the way Appalese in the trial court did, you're allowing people to be stripped of earned income, not a windfall, not a benefit that you're getting by reason of the death. You're stripping something you earned, a claim you had. If the claimant was successful, if Pelham was successful with her claim, she would have to pay income taxes on this money. All of the items that are clearly barred by the EAS, you don't pay any income taxes on. That's free money. And if you want to look at it at the side of the estate, the amount owed to the caregiver, that would be income to the caregiver, would be a liability of the estate, which would reduce the taxable estate. We're really not here on whether or not she can prevail and whether or not her claims would eventually succeed. We're simply here to determine whether or not the court properly dismissed this claim at this juncture. Why don't you save some time for rebuttal, and we will hear from you. Let's assume there isn't even a statute here. Which statute are you referring to? Assume there isn't a statute, which statute are you saying wouldn't exist? The statute here as to the elderly. You have to prove quantum error. What are the elements of quantum error? That there was a contract implied and that the services were voluntarily accepted by the recipient with the expectation of compensation being paid for that. And that, I believe, is the distinction that distinguishes family members from non-family members. Okay, so part of this would be that when you commit battery on the elderly, you could charge the elderly for the battery. Is that what you're telling us? I don't follow, Your Honor. Well, the services here also included battery on this elderly person. And any future compensation from that battery on would not be. . . I mean, if everybody was alive now and they could tell their story, you know, and the elderly person was capable of telling their story as to how many times they were smacked around, do you think that there would be a judgment in favor of the caregiver? Well, again, I think it would depend on when the act occurred. Because, again, if you provide quality care before. . . Well, is it one act or is it multiple acts? Is it a daily act? Is it a holiday act? Well, I could flip the question on the other side and say you have a person who's got bills outstanding to a caregiver and now you can make allegations of abuse with the hope that if you. . . Well, there's no bills around or anything like that in this case. Why would you sort of hypothetically. . . Well, I can say the similar question looked at from the other side would say now if I'm a person receiving care, I say that my caregiver battered me and if I can put enough of a claim together, then all of a sudden I know I can wipe out a bill that I would have outstanding for care that I was provided. So that same token of you saying every elderly person was battered, can they talk about it? Well, it would also lead them to be able to make claims with the idea I can get out of having to pay bills, not just I don't have to give them free money by way of my will or what have you, things that would pass. They could get out from underneath right to potential claims for services rendered by making allegations of abuse. You're actually under that scheme. You could be under that understanding. You could be encouraging people to then make claims against caregivers because if they're successful, they don't have to pay the caregiver for any services they rendered which were unpaid at that time. All right. We will provide you with time for rebuttal. Thank you. Eric Dorgan again for the NAPALEE. I'll skip my introductory remarks and get right to the statute. You notice we usually just cut right to the statute. And I'm going to throw a monkey wrench into this. I think in the 6.2, I'm referring to the 6.2, there's also 6.6. All right. And there's a difference between 6.2 and 6.6. And the difference matters. And it's a difference that Judge Cogman recognized in her ruling on the motion to dismiss. What does 6.6 say? 6.6 is also, it was introduced the same day by the same legislature. It's also for abuse of the elderly. But the opening language of 6.6a means a person who is convicted of a violation of goes on to list some statutes. And that includes section 12-4.4a. Abuse as defined in 6.2a doesn't say convicted of a violation. The statute doesn't say convicted of a violation. Abuse is defined differently under 6.2. It's defined to mean an offense described in 4.4. And so then if we go look at 4.4a, I apologize, 4.4a, and I would submit to you that this is precisely what Judge Cogman did in her opinion, she specifically referenced, and I forgive you for the lost sight. What does 6.6 say? 6.6. And you're talking about 6.6a? No, 5-2, 6.6, and then 6.6a of the Probate Act, it says a person who is convicted of a violation. I have no problem handing out my copy of the statute if it would assist the court. Well, 6.2b is persons convicted of financial exploitation, abuse. Correct. Neglect. Okay. And now abuse is defined differently in 6.2 than 6.6. How does 6.6 define it? In 6.2, abuse means any offense described in 4.1. An offense described. Right. And so when you go look at the offenses, it talks about physical abuse. And what does 6.6 say? 6.6 says a person who is convicted of a violation of 4.4a. Yeah. So if someone is convicted of 4.4a, you would bring a motion to dismiss under 6.6 because there's a conviction under 4.4a. Then there's the situation, we imagine someone that's convicted of aggravated battery of an elderly person, which is a specific provision in the aggravated battery statute. That is not a conviction under 4.4a. But if you look at 4.4a and the offenses described, and the offenses described are Literal abuse of a caregiver. Performs acts that cause a person's life to be in danger. Right. Physically abused. Abuses. And so what Judge Carlin said is misdemeanor battery is physical abuse. Misdemeanor battery is having the person's life to be in danger. So you're saying 6.6 expands the definition of what would a conviction be? Well, 6.2. 6.6 is very narrow to 4.4a. So if someone's been convicted under 4.4a, there's no question. Yeah. Then the question under 6.2 is. That's what you interpret the statute as. 6.2 is, is the offense the person is convicted of described in 4.4? And that would cover. So you're saying it expands it. It expands it. Yeah. Judge Carlin interpreted it that way? In fact. I mean, I read her findings. I don't remember her referring to 6.6. No, she referred to 6.2. The way she ruled on 6.2. Here's, it's on the record in Commonwealth 109. She writes, for purposes of Section 5-2-6.2 of the Probate Act, the court finds that Kagan's battery conviction is, and she's internally quoted, an offense described in subsection B of Section 12-4.4a of the Criminal Code. So she very precisely followed the language of 6.2a. It's an offense described. That's why we didn't bring a motion pursuant to 6.6, because it was not a conviction of a violation of 4.4a. So that's why misdemeanor. So the issue wouldn't be whether it's misdemeanor or felony. It's a question of whether the conviction, the act of which you're convicted, is an offense described, because that would go to the purpose of the statute. She says in her order, for purposes of Section 5-2-6.2 of the Probate Act, the court finds that Klayman's battery conviction is an offense described in subsection B of Section 12-4.4a of the Criminal Code. And then she specifically references 720 ILCS 5-12-4.4a B1a. So she actually ties the misdemeanor battery to the performance acts that cause the person's life to be endangered offense described in 4.4a. And that's how Judge Kotlin allowed the misdemeanor battery to serve as the bar, as opposed to felony battery. Well, would you agree that under general principles of statutory construction that abuse as defined means any offense in subsection 1221, which was repealed, and then we move into Section 24, I'm sorry, 12.4.4a. Would you agree that under general principles of statutory construction that we can say that abuse, when the legislature has said abuse means any offense described in subsection 12-4, that we can say that misdemeanor battery is abuse? Yes, and I'll tell you why. So we have, because the word described is doing a lot of work there. It means any offense described. It doesn't say means any offense in 4.4a. It says abuse means any offense described in section 12-4. Right. Okay. So I'm too hard to describe to take what's in. These are the types of things under 4.4a that would be a bar if you're convicted of 4.4a under 6.6. But I read offense described from the legislature to say if someone's been convicted of aggravated battery of an elderly person. Well, she wasn't convicted of aggravated battery of an elderly person. No, but under this theory, 6.2 wouldn't bar aggravated battery, and 6.6 wouldn't bar aggravated battery of an elderly person. Don't you have to read all the provisions together? Yes. All right, so B says person's convicted of financial exploitation, abuse, neglect of an elderly person who have been found, okay, or those who have been found civilly liable. Right. So what do we do with this section? I do that. Person convicted of financial exploitation, abuse. Are we talking about, are we reading that with A, or are we simply throwing A out and reading this? No, no, I would read it this way. Abuse means an offense described, and a person convicted of an offense described. Yeah, so a person convicted of an offense described in 4.4a. Right. And misdemeanor battery is not one of those offenses. But misdemeanor battery is described. It's an offense described. And what I'm suggesting to the court is that offense described language is to draw in any of the other batteries. So you're saying that it includes then all the lesser included offenses as well? Yes. Because it's described, so what's the point of putting the numbers in there? I'm saying that the offense is described in these statutes and not including the other lesser included. Because it's paired. The only way I can make sense of the two statutes together, because 6.6 and 6.2 have to be doing something different. Because then it would just be redundant. So 6.6 is the one that gets you for certain. It gets you a conviction of 4.4a. It specifically says a violation of 4.4a. 6.2 doesn't say a violation. It just says violation of offenses described. Misdemeanor battery, aggravated battery would be described. Anything, if you look at 4.4, causes the person's life to be endangered, fails to perform acts that he or she knows, abandons the person. And so back to your last question about the purpose of the statute, that's what I take the purpose of the statute to be. It's not simply for, it's to get anybody that does any act like that as a caregiver. Well, couldn't the legislature have added all this language you're talking about if they chose to? That's how I take offense described to mean. That's actually how Judge Coven read it when she cited the specific offense. This language she saw in Warren is what she saw misdemeanor battery as. Has any court ever accepted this interpretation? I don't know that there's any court that's, I think this is the first court that has looked at. How exciting. You're thrilled. But that's how I reconcile 6.6 and 6.2 and what Judge Coven did. Was that in your original motion to dismiss? Where you were really focusing on by reason of death, weren't you? Actually, it's hard to know because the original, I'm trying to remember. I know we addressed it because Judge Coven addressed it in her motion to dismiss finding. So I have to look, but I know what came up that I know. Is there a question of material fact then about anything here? Is it misdemeanor battery, whether battery is abuse under the statute? Misdemeanor battery is 12-3 of the criminal code. When someone causes bodily harm or makes physical contact of an insulting or provoking nature. I don't think there's any disputes to that. I don't think there's any material fact. I think she pled guilty to... I know there's no question about what she was convicted of. I just don't know. But I guess to answer your question, to my offense described, I would suggest that it's a legal issue that I'm either right or I'm either wrong on. And that's not a question of whether any fact finding by the trial court could change the outcome. By reason of death. Well, let me start by noting, and the court asked if counsel is only going forward on a quantum merit claim. That's the only issue that's before us. The other parts of the complaint have been dismissed. They've forfeited any other... They've appealed all the orders. But I don't want to talk about what's in those counts because... It only goes to quantum merit. But the problem... Because I want to go back to your statutory custodial claim because it's very important what they're trying to do. And I'll start with a statutory custodial claim. Someone who has a statutory custodial claim will also have a quantum merit claim. They did the work. They were not paid. They were doing it with an expectation that they'd get money as a statutory custodial claim. Let's assume for the sake of argument, make it easy for 6.2, they've been convicted under 4.4a. They would be barred, but not by quantum merit. Because quantum merit... Yeah, it really isn't the cost of action. It's the language of the statute interpreted the way you're interpreting it. But on their theory, quantum merit would still pass to... She could still bring the car. Someone who's guilty of felony battery under 4.4a, that was barred from a statutory custodial claim, under their theory could still bring quantum merit. Because it isn't, under their theory, by reason of the death. Their original counts, counts 1 and count 3, were not breach of contract where I had a contract to get this money on a weekly basis. It was I'm supposed to take under the will. Yeah. That would be barred. Quantum merit is pled in the alternative. That's why they're not going forward on those counts in front of you, because they would be barred from saying, you should have taken under the will, here, this will be given under the will. If I'm right about what we talked about previously, the argument about whether 6.2 covers it, then under their theory of the case, she might have been barred under counts 1 and count 3, which we're not going to talk about anymore, but quantum merit, she's not barred. And our view is if you'd have been barred from the will, you're barred from quantum merit. It's that simple. And she would have been barred under the will, if I'm right about 6.2. All right. Well, explain why, by reason of the death, doesn't apply here. Well, the first thing I... Why doesn't prevent the estate from saying she's barred? The first thing about the Braun case, and Your Honor asked this question about compensation. In Braun, what mom brought was a claim for child support from December 1, 1988 to June 30, 1990, which would have been the emancipation of her son who killed her ex-husband. And there was a contract, there was a settlement in the domestic relations. In the domestic relations. The son killed the father on December 18, 1988. So there were 17 days for which she was not pre-deceased. And the appellate court did not cut it that fine. The appellate court said, you don't take at all. You killed him. It doesn't matter that you pre-deceased on this date, December 18. The court said, no, we're going all the way back, which would go to your question. In this case, if she was supposed to get paid on December 1 and December 18, and she abuses on December 18, and she sends a letter, when can I expect my last paycheck? The answer would be, you're never going to get your last paycheck. So our reason of the death in the Slayer statute case reached back beyond the date of death, the date of pre-decease, to include the entirety of the claim that could have been brought on behalf of who was the abuser, or in that case, the killer. And so that's how the statute was read in that case. We have the same exact language. And we would argue that it goes all the way, just as it would go back, to the day before, to the day before. It would go back until the entire time she had a claim. But again, as I said to you, her claim is really in the alternative to having under the will, and that we clearly wouldn't allow. The legislature wouldn't allow that. But if someone was barred under a will or trust or other instrument where we all made passes at the moment of death, that they could plead in the alternative for collection on that same amount. And so for that reason, we would ask that you affront the trial court. Thank you, Mr. Murphy. Thank you. A rebuttal? Thank you, Your Honors. I think one thing that would be helpful for me to point out, now that I've had a chance to go back, is that with respect to the quantum merit claim and the notion of family member and this idea that they would get two bites of the apple, as cited in Appellant's brief in the State of Teal, 329, ALAP 33, at the end of the blog quote, when talking about what quantum merit claims would be and how no item of value you're accepting, it also says, we presume such service to be gratuitous only if they are performed by the decedent's family members. So even in the case law that's interpreted as before, they've carved out this idea that the quantum merit claim to family members doesn't apply because it's implied that they're acting out of the goodness of their heart and that they're being performed gratuitous. So then to allow them to make that as an alternative claim to a statutory claim isn't a concern by way of the case law that's already out there. And then turning to this issue of this new section of the Act, 6.6a, counsel did point out that it says conviction of a violation. So first of all, I point out that through statutory interpretation from my original argument, if you go to that criminal code definition of offense, offense means a violation of. So if you read offense into the definition, abuse means a violation of. So it is exactly the same as 6.6. However, 6.6a, which he, which Appleese pointed out, says a conviction of violation of section 12-19, 12-21, 16-1.3, or 17-56, or subsection a or b. So in that section, the illustrator went to great lengths pointing out other sections that purportedly would constitute violations that would consider it. In this statute 5.6, 2-6.2, they've only referenced 12.44. So again, we believe that supports the reasonable interpretation that they only meant actual conviction. If it's only going to harm her a little bit, it's okay. But if it's a greater harm, that's not okay? Well, there's all these levels of it, and having felonies versus misdemeanors is a great way of showing legislative intent. What about the broad language of b? It says persons convicted of financial exploitation, or we'll just say persons convicted of abuse shall not receive any property. And then it says by any reason or any other circumstance. Well, but again, that any other circumstance is still followed by reason of death. So in order to get to that, we have to completely ignore that. No, it says a person convicted of abuse shall not receive any property. They shall not receive any benefit, or they shall not receive other interest by reason of death of the elderly person. So why are you saying that it's tied to that? Why can't we read it since it's so broad? Because it says any property, and then it says, and then they can't take in any other capacity, any other capacity, such as like a caregiver or whatever, any capacity, any other capacity. Why isn't the broad language of the statute meant to exclude anybody that abuses any person at any time? They just can't take anything. Well, because they could have said that. They said you can't take, you can't receive any property. It says any property. So the way I'm reading this, any refers to property. It would mean to any benefit and any other interest. You're saying that by reason of death has to modify these other things. It says by reason of death has to modify all of them. So if you don't get the by reason, and that's further, I think, by the section. Further on it says, or in any other capacity, whether the property, benefit, or other interest passes pursuant to any form of title, registration, testamentary, non-testamentary instrument, or testancy. So that passes is another key element that you've got to look at in conjunction with by reason of death. Because when somebody dies, things start passing. In this case, the claim doesn't pass to them by reason of death or by any reason. You have to make a claim. You have to prove it up in court. There's nothing that passes. So all the examples are windfall, the benefits that a recipient gets for doing nothing. Well, how doesn't Braun, I mean, how do you distinguish the Braun case? Again, Braun, the distinguishing factor in the Braun and the Slayer statute is the son, as of murdering his father, is deemed a pre-deceased at that moment. So there can be no. Pre-deceased at that moment, according to the facts. Well, no. That's what the finding of that he murdered his father, the impact of the Slayer statute by its terms says that the son will have been deemed to pre-decease the father. Thereby, any obligations of the father to pay child support, to pay college, wouldn't exist because there's no person to be paying them for the benefit. The son has passed away. What if counsel, what do you say to counsel's argument that you couldn't take by the will, but you can suddenly take by quantum? Well, you're not taking. You're going to be lost out on the will. You're not taking. Do you agree the only claim that you have argued here is the quantum merit? Yes, and that's because that was for services rendered. That's earned income. That is not a will at all. But you can't take by will, by will, because of the reason of death. How can you do it? Because you're not taking. You've earned this. This was a pre-existing right. This is not something that arises of death. You're not taking anything. Even if you assert a claim, you have to still go into court and prove all the elements of it. What about the court's interpretation of 6.6? I don't think the court ever touched on 6.6. She specifically concluded that misdemeanor battery was included in the statute. Under 6.2, you mean? Yeah. Well, her conclusion is that battery is encompassed in the statute. Well, it's encompassed under 6.2A, not 6.6. Right. But you still, I mean, as a lawyer, you're saying that she misapplied the law, that she included it. What about 6.6 in counsel's argument and his interpretation? Well, 6.6 is a completely different statute. 6.6 says convicted of violation of Section 12-19, 12-21, 16-1.3, or 17.56, or subsection A or B of subsection. It goes on with great length to state other convictions that would fall under that act. 6.2 only says, and again, if you take the criminal code definition of offense, it's persons convicted of, and then the abuse means, any offense described. An offense is a violation. So in order to be convicted of a violation of 12.4, you have to be convicted of it. You haven't violated it until you've been convicted. So by really, by not ignoring this word offense, which is defined in the criminal code, it allows us to say that the only way that you can be barred by that is if you are convicted of a violation of 12.4A itself, which, again, is a felony and carries a lot more consequences. So when you look at legislative intent, their decision to categorize something as a felony or misdemeanor has implications and can't be ignored. They specifically delineated they think this offense of misdemeanor battery is not as severe and shouldn't carry the consequences that come with a felony conviction. So in short, we're asking this court to reverse the trial court's determination on either A, the grounds that the claimant appellant was not convicted of a crime that would trigger the statute, and alternatively, if this court did determine that misdemeanor battery is an offense described under 12.4A, that still it doesn't trigger to bar this claim because this is not a claim that passes by reason of death. This is a claim for earned income. This is a claim that exists prior to the death of the decedent. And more importantly, if the claimant is deemed to have pre-deceased, a deceased person's estate would still be able to bring this claim against the decedent's estate. It's not something that dies with the claimant. It's not a property passage that if you aren't surviving, you don't get to receive it. So if there are no further questions, thank you. Thank you. All right, we will take this matter under advisement and we'll call the next case.